United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


ORACLE AMERICA, INC.,

    Plaintiff,

    v.

MICRON TECHNOLOGY, INC.,

    Defendant.

_____/

No. C 10-4340 PJH

**ORDER DENYING MOTION TO DISMISS**

    Defendants' motion to dismiss the complaint came on for hearing on January 12, 2011 before this court. Plaintiff Oracle America, Inc. ("Oracle" or "plaintiff") appeared through its counsel, Jerome Murphy, Suzanne Rode, and Matthew McBurney. Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively "Micron" or "defendants") appeared through their counsel, Joel Sanders and Jenna Musselman. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby DENIES defendants' motion to dismiss, for the reasons stated at the hearing, and as follows.

## BACKGROUND

    Oracle brings this action against Micron to recover damages stemming from an alleged conspiracy to fix prices in the market for dynamic random access memory ("DRAM").[1] Oracle generally alleges that defendants engaged in an unlawful conspiracy to fix prices and manipulate the market for DRAM, and that as a result, Sun paid artificially

---

[1] Oracle's suit is based upon purchases of DRAM made by Sun Microsystems ("Sun"), a company that Oracle acquired on January 26, 2010. As part of the Sun acquisition, Oracle acquired all of Sun's antitrust claims, including those stemming from purchases of DRAM. See Complaint, ¶ 13.

inflated prices for DRAM, in violation of federal and state antitrust laws. See generally Complaint.

A.     Background Allegations

More specifically, plaintiff alleges that from 1998 through 2002, Sun purchased over $2 billion worth of DRAM from defendants for incorporation into the servers and workstations that Sun designed and sold. Complaint, ¶ 46. Sun's DRAM purchases occurred in one of two ways: first, Sun employed a team of buyers and supply chain managers in the U.S. who negotiated the purchase of DRAM directly with DRAM manufacturers, including defendants. See id., ¶ 49. Sun purchased industry-standard DRAM modules from defendants, as well as customized DRAM modules, for use in Sun products. Id., ¶ 50. Second, Sun also purchased finished servers and workstations that incorporated DRAM sold by defendants. Id., ¶ 51. These servers and workstations were manufactured by third party external manufacturers, who purchased the DRAM pursuant to the DRAM prices negotiated by Sun's buyers and supply chain managers in the U.S. Id.

As a result of defendants' unlawful activities, plaintiff alleges that Sun purchased artificially inflated DRAM – via both direct purchases of DRAM from defendants, and via Sun's purchase of DRAM-containing products from external manufacturers.

Plaintiff now asserts three claims against defendants: (1) violation of the Sherman Act, 15 U.S.C., § 1; (2) violation of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq.; and (3) violation of California's Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200 et seq.

B.     Instant Motion

Defendants' motion to dismiss originally targeted multiple claims for dismissal, including all indirect purchaser claims under federal law, and claims based on foreign DRAM purchases.

On December 3, 2010, however, the parties filed a stipulation that significantly narrowed the matters presented by plaintiff's complaint, and thus, the arguments on

dismissal.  Pursuant to this stipulation, defendants now target only those claims based on Sun's purchase of DRAM-containing servers and workstations from external manufacturers.

**DISCUSSION**

A.     Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are taken as true. Id. at 94.  However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n] that  the pleader is entitled to relief. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

In addition, when resolving a motion to dismiss for failure to state a claim, the court

may not generally consider materials outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). There are several exceptions to this rule. The court may consider a matter that is properly the subject of judicial notice, such as matters of public record. Id. at 689; see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

B.    Analysis

The parties agree that resolution of defendants' motion requires analysis of only one issue: whether Sun has antitrust standing under California's Cartwright Act to assert claims based on Sun's indirect purchases of DRAM incorporated into finished products (i.e., DRAM-containing products). As noted, Sun alleges that it purchased finished DRAM-containing products from external manufacturers (EMs), who had previously in turn directly purchased DRAM from defendants – at prices expressly negotiated by Sun. See, e.g., Complaint, ¶ 51.

By way of background, and as previously noted by the court on the numerous occasions it has had to consider the differing parameters of the antitrust standing inquiry, antitrust standing refers to the standing requirements that a plaintiff must satisfy in all private antitrust suits seeking monetary damages under federal and state antitrust statutes. A plaintiff seeking monetary damages for antitrust violations must prove that he or she has been (1) "injured in his business or property;" (2) "by reason of anything forbidden in the antitrust laws...". See, e.g., 15 U.S.C. § 15(a). In Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 (1983)("AGC"), the Supreme Court

fashioned a general balancing test to be used in determining whether a plaintiff is a proper party to bring an antitrust claim.  The AGC test enumerates a variety of factors that are employed in "evaluat[ing] the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them," in order to determine standing.  Id. These factors include the nature of the injury alleged, the directness of the injury, the speculative nature of the harm, the risk of duplicative recovery, and the complexity in apportioning damages.  The Ninth Circuit has embraced this test, announcing its commitment to the AGC factors in American Ad Mgmt., Inc. v. Gen. Tel. Co., 190 F.3d 1051, 1054-55 (9th Cir. 1999).

In order to resolve the broader question of Sun's antitrust standing here, the court must determine the following issues disputed by the parties: (1) whether Sun was a participant in the relevant DRAM market; and (2) whether Sun otherwise generally satisfies the AGC requirements for antitrust standing.

### 1. Whether Sun Participated in the Relevant Market

Defendants contend that Sun, as an indirect purchaser of DRAM-containing products from external manufacturers, did not participate in the relevant price-fixed market – which defendants define as the market for stand alone DRAM.  See AGC, 459 U.S. at 538; Bhan v. NME Hosps., Inc., 772 F.2d 1467, 1470 (9th Cir. 1985)(noting that injured antitrust parties must be participants in the "same market as the alleged malefactors").  According to defendants, only the EMs participated in the relevant market, since they are the true direct purchasers of DRAM from defendants, which was then incorporated into finished products for purchase by Sun.  Defendants rely upon and invoke the court's prior reasoning in the In re Dynamic Random Access Memory (DRAM) multidistrict litigation; specifically, the court's order granting judgment on the pleadings in part with respect to the indirect purchaser class of plaintiffs in that action.  The court there held that plaintiffs lacked antitrust standing to assert claims under the Cartwright Act, based on the purchase of products in which DRAM is a component.  See In re DRAM, MDL No. 02-1486 PJH, Order Granting in Part and Denying in Part Defendants' Motions for Judgment on the Pleadings

("Order re Mot. Judgm. Plead.") at 6-18.  The court reasoned that, in order to grant antitrust standing, a plaintiff must be a consumer or competitor in the relevant market.  Plaintiffs – who were end user consumers of computers and other electronic products – were not participants in the alleged market for DRAM, but rather in related markets for products in which DRAM was a component.  See id. at 14.

Oracle, however, contends that the court's prior reasoning does not apply to bar antitrust standing in this instance, because unlike the indirect purchaser plaintiffs in In re DRAM, here Sun *did* participate in the market for DRAM – by negotiating directly with defendants in order to set the prices at which EMs were then required to purchase DRAM.

At first blush, defendants' argument seemingly disposes of Sun's claims, to the extent Oracle seeks recovery based on indirect purchases of DRAM-containing products from third party EMs.  Defendants are correct, after all, that in In re DRAM, the court previously recognized a market participation requirement that would apply to the would-be antitrust plaintiffs, and furthermore, that indirect purchasers of component DRAM did not participate in the same market as the DRAM market itself under the Cartwright Act.

Upon closer inspection, however, such a conclusion would be premature here.  Defendants may be correct that plaintiff has technically alleged indirect purchaser status via Sun's purchase of component DRAM from EMs; however, fairly reading the complaint, the court finds that plaintiff has *also* alleged Sun's participation in the market for DRAM itself, by virtue of its direct negotiation with defendants and other DRAM suppliers regarding the price at which stand alone DRAM will be sold to the EMs.  See, e.g., Complaint, ¶ 49 (Sun's Buyers and supply chain managers "negotiated the purchase of DRAM directly with the DRAM manufacturers," using "publicly available information regarding DRAM prices" such as "spot market prices, contract prices... and other information regarding price trends and supply conditions in the market"); id., ¶ 51 (price of the DRAM contained in EMs' servers and workstations "was negotiated by Sun's buyers and supply chain managers" pursuant to the foregoing "procurement mechanisms ... and then relayed to the third-party

6

[EMs]"). This fact distinguishes Oracle's allegations from those at issue in the In re DRAM litigation – which involved final end users and consumers of DRAM-containing products.

Defendants dismiss this distinction, on grounds that only the actual purchaser of stand alone DRAM is relevant, irrespective of any pricing negotiations. Defendants have submitted no legal authority establishing this point, however (indeed, as discovered by the court previously, there is a dearth of case law analyzing the requirements for 'market participation' in any analogous scenario), nor do they offer a persuasive rationale for why 'participation' in the market for DRAM should be narrowly or technically limited to direct 'purchases' in the market for DRAM at the pleading stage – particularly in view of the lack of controlling authority.

To the extent, moreover, that defendants rely on the court's summary judgment ruling in Sun v. Hynix, C 06-1665 PJH, such reliance is misguided at this stage. While accurate that the court's ruling expressly held that Sun's EMs, and not Sun, were the true direct purchasers of DRAM from defendants – notwithstanding any overarching pricing strategy maintained by Sun – defendants ignore the fact that the court's summary judgment order (1) was premised on a complete evidentiary record on summary judgment; and (2) considered Sun's standing as a direct purchaser under the federal antitrust laws, not the Cartwright Act. The Cartwright Act, as previously recognized by this court, is notably interpreted more liberally than the Sherman Act. As such, the court's prior holding is of limited value in deciding the present dismissal motion.

In sum, reading the allegations of plaintiff's complaint in the light most favorable to plaintiff, taking note of the distinctions between the present allegations and those involved in the In re DRAM action, and without clear guidance from any legal authority as to the precise issue raised by defendants' arguments, the court hereby DENIES defendants' motion to dismiss, based on grounds that Sun has failed to allege any participation in the market for DRAM.

### 2. Whether AGC Test is Otherwise Satisfied

Defendants also assert that, aside from the market participation requirement, plaintiff cannot otherwise allege that the AGC factors are satisfied, and that antitrust standing fails for this reason, as well. Specifically, defendants contend that three AGC factors cannot be satisfied – directness of the injury, the speculative nature of the harm, and the complexity in apportioning damages. Defendants highlight the alleged distribution chain involved in Sun's purchases of DRAM-containing products from the EMs, and note the complex number of steps involved in the distribution process – all of which suggests that plaintiff's alleged injuries are too remote, unduly speculative, and would introduce too much complexity in apportioning damages.

As a preliminary matter, plaintiff argues that the AGC test should not be applied to plaintiff's Cartwright Act claims. The court, however, did analyze and consider the identical issue in its ruling on the indirect purchasers' motion for judgment on the pleadings in In re DRAM. Analyzing the case law and relying on the Ninth Circuit's thorough reasoning Knevelbaard Dairies v. Kraft Foods, Inc., the court concluded that AGC should be applied to the Cartwright Act. See 232 F.3d 979 (9th Cir. 2000). Here, plaintiff presents no new case law that would warrant a departure from this holding, other than a general exhortation to refrain from applying AGC factors until the California Supreme Court or legislature has affirmatively required as much. Plaintiff presents no reasonable basis for ignoring the Ninth Circuit's own interpretation of the matter. Accordingly, the court continues to conclude that application of the AGC factors are appropriate.

Turning now to the merits of defendants' arguments, they do not justify dismissal for lack of antitrust standing. With respect to the first AGC factor – i.e., directness of the alleged injury, plaintiff alleges that Sun purchased servers and workstations containing DRAM from EMs, who purchased the DRAM at prices negotiated by Sun pursuant to Sun's own procurement mechanisms. See Complaint, ¶ 51. The court finds this allegation sufficient at the pleading stage to establish under the Cartwright Act that defendants'

allegedly unlawful activity in setting artificially high prices for stand alone DRAM was directly linked to the artificially high cost of DRAM purchased by the EMs at Sun's prices, and incorporated into the server and workstations that Sun purchased from the EMs. Given the set nature of the price for DRAM established by Sun and paid by the EMs, and the fact that this DRAM was used in products that were manufactured and sold to Sun directly by the EMs, with no middleman, plaintiff has alleged a sufficiently direct injury at this stage. Similarly, the court concludes that the limited nature of the supply chain and interactions pled by plaintiff (i.e., the negotiation of DRAM price by Sun, the purchase of DRAM by EMs and manufacture of servers and workstations on Sun's behalf for resale to Sun) also compels a finding that Sun's alleged injury and damages are not too speculative or unduly complex to apportion, at this juncture and pursuant to the Cartwright Act.

Defendants seek to combat plaintiff's showing by arguing that Sun's procurement mechanism, and the EMs' purchase of DRAM pursuant to that procurement mechanism, was in fact much more complex and intricate than plaintiffs' allegations suggest. However, in making this argument, defendants once again rely on the factual record underlying the court's prior summary judgment order in Sun v. Hynix. As already noted, it would be inappropriate at this juncture, to grant dismissal in this action based on facts introduced on summary judgment in a separate unrelated action. While defendants' characterization of the underlying facts may very well be correct, they must await the appropriate introduction of such evidence in this case, before asking the court to make findings based on that evidence.

Indeed, even if the court were to take notice of the earlier findings in Sun v. Hynix regarding Sun's procurement mechanisms, the court would also likely take notice of the fact that the EMs sold the servers and workstations they manufactured to Sun based on a cost-plus-percentage markup basis – which might very well suggest that Sun's damages *could* be apportioned without undue complexity.

In sum, however, given plaintiff's allegations and the early posture of this case, as

well as more liberal interpretation granted to the Cartwright Act, the court hereby DENIES defendants' motion to dismiss, on grounds that plaintiff has failed to adequately allege antitrust standing.

C.  Conclusion

For all the foregoing reasons, defendants' motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 21, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge