UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ORACLE AMERICA, INC.,

    Plaintiff,

    v.

MICRON TECHNOLOGY, INC.,
et al.,

    Defendants.
_____/

No. C 10-4340 PJH

**ORDER DENYING MOTION
TO STRIKE AFFIRMATIVE DEFENSE**

Plaintiff's motion to strike the twenty-first affirmative defense came on for hearing on July 20, 2011 before this court. The parties appeared through their respective counsel. Having read all the papers submitted and carefully considered the relevant legal authority and argument of counsel, the court hereby DENIES plaintiff's motion to strike for the reasons set forth below.

## BACKGROUND

This matter is related to the DRAM MDL antitrust litigation (M 02-1486 PJH). Plaintiff Oracle America, Inc. brings this action against defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron") to recover damages stemming from the conspiracy to fix prices in the DRAM market that began in 2002, and which led to a criminal investigation by the Department of Justice. On October 25, 2002, Micron admitted its involvement in a price-fixing conspiracy in the DRAM industry and entered into a corporate leniency agreement with DOJ. See doc. no. 54, Ex. 1 (Micron Amnesty Agreement). Micron provided information about the conspiracy in exchange for the DOJ's agreement "not to bring any criminal prosecution against Micron for any act or offense it may have committed prior to the date of [Micron's amnesty agreement with DOJ]

in connection with the anticompetitive conduct being reported." Id. at 2. In March 2008, the Antitrust Division notified counsel for Micron that it had concluded its investigation, making its amnesty agreement "final." Doc. no. 60 ¶ 5.

In 2002, customers who had purchased DRAM chips from members of the alleged conspiracy brought direct and indirect purchaser class-action lawsuits against Micron and other DRAM manufacturers alleging violations of the Sherman Act and state antitrust laws. Many state attorneys general also sued. In 2006 and 2007, Sun Microsystems ("Sun") (which Oracle acquired in January 2010) and other plaintiffs opted out of the DRAM class action and filed individual lawsuits against members of the alleged conspiracy.

Micron represents that Sun did not initially name Micron as a defendant in its suit, but instead entered into a tolling agreement. Doc. no. 59 at 8. In the prior antitrust litigation brought against other DRAM suppliers, Sun sought Micron's cooperation. Counsel for Sun sent Micron a letter, making a "Demand for Cooperation." See doc. no. 60-3, Ex. C. In that letter, dated September 12, 2006, counsel for Sun made the following representations to counsel for Micron:

> We understand that Micron has sought corporate amnesty under the Department of Justice Antitrust Division Corporate Leniency Program. We further understand that Micron has entered into a conditional leniency agreement and is seeking to take advantage of reduced penalties that may be available under § 212 of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 (the "Act"). As you know, in conjunction with Micron's leniency agreement, to receive the benefits of the Act Micron is required to cooperate fully with Sun and Unisys in a variety of ways, including providing a full account to our clients of all facts known that are potentially relevant to the civil action; furnishing all documents or other items potentially relevant to the civil action that are in its possession, custody, or control; and making individuals such as officers, directors and employees available for interviews, depositions, and testimonies in connection with the civil action. See Act at § 213(b)(1), (2) and (3).

Doc. no. 60-3, Ex. C. Micron provided such information as a defendant in other opt-out cases that had been consolidated with Sun's prior action for pre-trial purposes, including discovery. Doc. no. 53 at 6 n.2. Sun settled its antitrust claims against the defendants in the prior civil action shortly before trial. Doc. no. 59 at 9; doc. no. 68-3 at 3.

2

Oracle filed the instant action against Micron on September 24, 2010.  Oracle alleges that Sun purchased artificially inflated DRAM, both through direct purchases of DRAM from defendants, and through Sun's purchase of DRAM-containing products from external manufacturers.  Oracle seeks to recover those overcharges from Micron under Section 1 of the Sherman Act and Section 4 of the Clayton Act, which provides for treble damages and joint-and-several liability for violations of the Sherman Act.  To that end, Oracle asserts three claims against Micron: (1) violation of the Sherman Act, 15 U.S.C., § 1; (2) violation of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq.; and (3) violation of California's Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200 et seq.

By order dated March 21, 2011, the court denied Micron's motion to dismiss which challenged antitrust standing to bring the claims based on Sun's purchase of DRAM-containing servers and workstations from external manufacturers.

Micron filed an answer on April 4, 2011, then filed an amended answer on April 18, 2011 that pled the following affirmative defense:

> Plaintiff's claims based on joint-and-several liability and for treble damages relief are barred, in whole or in part, by the civil leniency provisions of the Antitrust Criminal Penalty Enhancements and Reforms Act of 2004, Pub. L. No. 108-237 § 213, 118 Stat. 661 (2004) ["ACPERA"].  Micron is party to a currently effective amnesty agreement with the United States Department of Justice, Antitrust Division.

Doc. no. 47 at 31.

Oracle now moves to strike the ACPERA defense on the ground that the statute may not be applied retroactively to Micron's amnesty agreement.

## DISCUSSION

A.  Legal Standard

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft Co., 618

3

F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystems, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id. However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbott Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994). A decision to strike material from the pleadings is vested in the sound discretion of the trial court. Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000).

B.   Legal Analysis

Section 213 of the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") limits exposure to civil damages for an antitrust conspirator who has a "currently effective" leniency agreement with the DOJ Antitrust Division and who cooperates satisfactorily with the DOJ and with private litigants in related civil antitrust actions. Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 665 (2004).

The legislative history of ACPERA demonstrates that the statute was passed to provide "increased incentives for participants in illegal cartels to blow the whistle on their co-conspirators and cooperate with the Justice Department's Antitrust Division" by limiting "a cooperating company's civil liability to actual, rather than treble, damages in return for the company's cooperation in both the resulting criminal case as well as any subsequent civil suit based on the same conduct." 150 Cong. Rec. S3613 (2004) (statement of Senator Hatch). Prior to passage of ACPERA, the Justice Department's Corporate Leniency Policy

1  provided amnesty from criminal charges, but not from civil liability. ACPERA was designed
2  to limit damages for cooperating conspirators to the actual damages attributable to their
3  own conduct, rather than facing treble damages. Id. at S3614 (this provision "amends the
4  antitrust laws to modify the damage recovery from a corporation and its executives to
5  actual damages. In other words, the total liability of a successful leniency applicant would
6  be limited to single damages without joint and several liability.").

7  Oracle contends that Micron's ACPERA-related defense is barred because Micron
8  entered the amnesty agreement with the DOJ in 2002, and that ACPERA, which was
9  passed in June 2004, does not apply retroactively to Micron's agreement. Citing authority
10 establishing a clear presumption against retroactive application of a statute, Oracle argues
11 that nothing in the statutory language or legislative history indicates a clear legislative intent
12 to apply the law retroactively. Doc. no. 53 at 10-14 (citing Landgraf v. USI Film Prods., 511
13 U.S. 244, 265, 280 (1994)).

14 Micron does not contend that ACPERA applies retroactively. Rather, Micron argues
15 that Oracle's lawsuit was filed after ACPERA was enacted so that Micron seeks
16 prospective application of ACPERA in this action and that retroactivity under Landgraf is
17 not implicated. Micron contends that invoking ACPERA as an affirmative defense to this
18 action would not require retroactive application of ACPERA because ACPERA regulates
19 post-enactment litigation. Doc. no. 59 at 10.

20 Oracle filed this civil action against Micron in 2010, six years after the passage of
21 ACPERA. The parties dispute here whether the civil leniency provisions of ACPERA are
22 triggered by the date of the leniency agreement or by the commencement of civil litigation.
23 Having reviewed the statute and legislative history, the court determines that the civil
24 leniency provisions of ACPERA do not apply to the entry into the leniency agreement with
25 the government but rather limit the amnesty applicant's liability for damages in a civil
26 antitrust action if it cooperates with the claimants in the civil action. The leniency

provisions under ACPERA therefore do not have retroactive effect on Oracle's claims in the present action.

ACPERA provides for a limitation on damages "in any civil action alleging a violation of section 1 or 3 of the Sherman Act, or alleging a violation of any similar State law, based on conduct covered by a **currently effective** antitrust leniency agreement." Pub.L. No. 108-237 § 213(a) (emphasis added). ACPERA thus expressly provides that civil damages may be limited for an amnesty applicant who had already entered into a leniency agreement at the time that ACPERA was enacted. Oracle's proposed reading of the statute would limit its benefits to cooperating conspirators who had entered into a leniency agreement only after the passage of ACPERA; that reading is not supported by the plain language of the statute. Rather, the statute contemplates that the limitation on damages would be available to amnesty applicants who were party to an existing leniency agreement.

The legislative history supports this reading of ACPERA. Senator Hatch's comments indicate that "this limitation on damages is only available to corporations and their executives if they provide adequate and timely cooperation to both the Government investigators **as well as any subsequent private plaintiffs bringing a civil suit based on the covered criminal conduct.**" 150 Cong. Rec. S3614 (emphasis added). The supplemental legislative history to House Bill H.R. 1086 prepared by the House Committee on the Judiciary indicates that the civil leniency provisions would limit liability for civil damages only to an amnesty applicant who was covered by a currently effective agreement and who cooperated in the civil action to the court's satisfaction:

> Section 213 states that conduct covered by a '**currently effective** antitrust leniency agreement' will subject an antitrust leniency applicant and its cooperating individuals, as defendants in a private or state enforcement antitrust action, to liability only for the actual portion of damages suffered by the claimant 'attributable to the commerce done by the applicant in the goods or services affected by the violation' **so long as the court in which the civil action is brought determines 'that the applicant or cooperating individual . . . has provided satisfactory cooperation to the claimant**. . . .'

150 Cong. Rec. H3658 (emphasis added). Thus, Congress contemplated that ACPERA

would cover amnesty applicants who were subject to an existing leniency agreement that had been entered into before ACPERA was passed, to limit civil damages sought by "subsequent private plaintiffs."

In reply, Oracle contends that the "currently effective" language defines a substantive limitation, rather than temporal scope, of the civil leniency provisions under section 213 of ACPERA, which requires the defendant's amnesty agreement to be current and valid at the time a court imposes judgment or otherwise determines liability and damages. Doc. no. 67 at 9. The parties do not dispute that section 213(b) of ACPERA requires the court to determine whether the amnesty applicant "has provided satisfactory cooperation to the claimant with respect to the civil action" at the time of determining damages. The court is thus required to make the substantive determination whether the amnesty applicant has satisfied the requirements of the civil leniency provisions near the end of the litigation, not at the outset. If the ACPERA-related defense were stricken at the pleading stage, the court would never reach the damages analysis required by the statute.

Oracle relies on Martin v. Hadix, 527 U.S. 343, 353 (1999), where the Supreme Court held that the limitation on attorney's fees established by Prisoner Litigation Reform Act of 1995 could not apply retroactively to limit fees on work performed before the date of enactment, but would limit fees for services performed after enactment. Oracle cites Hadix for its holding that the PLRA contains no express command about its temporal scope and could not be applied retroactively in the absence of an express command by Congress. Hadix, 527 U.S. at 361-62. Oracle contends that Micron seeks retroactive application of the ACPERA provisions to its pre-enactment leniency agreement, and that, like the PLRA, there is no express command in ACPERA to apply the law retroactively. However, Oracle fails to address Micron's argument that this case does not implicate retroactive application of ACPERA's civil leniency provisions because of the undisputed fact that Oracle filed its lawsuit after ACPERA was enacted.

The reasoning of Hadix rather supports the determination that ACPERA does not have retroactive effect as applied here. In Hadix, the court determined that the PLRA

7

lacked an express directive that the cap on attorney's fees would apply retroactively to cases that were pending at the time the PLRA was enacted. The Supreme Court determined that with respect to postjudgment monitoring performed before the effective date of the PLRA, the PLRA fee limitations would have an impermissible retroactive effect:

> Long before the PLRA was enacted, the plaintiffs were declared prevailing parties, and the parties agreed to a system for periodically awarding attorney's fees for postjudgment monitoring. . . . The PLRA was not passed until well after respondents had been declared prevailing parties and thus entitled to attorney's fees. To impose the new standards now, for work performed before the PLRA became effective, would upset the reasonable expectations of the parties.

Hadix, 527 U.S. at 358, 360. Hadix differentiated this retroactive effect on fees for services performed before passage of the PLRA from the absence of retroactive effect on services performed after its passage:

> With respect to postjudgment monitoring performed after the effective date of the PLRA, by contrast, there is no retroactivity problem. On April 26, 1996, through the PLRA, the plaintiffs' attorneys were on notice that their hourly rate had been adjusted. From that point forward, they would be paid at a rate consistent with the dictates of the law. After April 26, 1996, any expectation of compensation at the pre-PLRA rates was unreasonable.

Id. at 360.

Hadix rejected the plaintiffs' argument that applying the PLRA fee limitation for services performed after enactment would have retroactive effect in cases that were pending at the time the PLRA was passed because the fee limitation would affect the plaintiffs' attorneys' reasonable expectations when they initially decided to file suit on behalf of the prisoner clients. The Supreme Court held that "respondents' argument that the PLRA affects pre-PLRA conduct fails because it is based on the assumption that the attorney's initial decision to file a case on behalf of a client is an irrevocable one. In other words, respondents' argument assumes that once an attorney files suit, she must continue working on that case until the decree is terminated. Respondents provide no support for this assumption, however." Id. at 361. The Supreme Court concluded that "[i]t cannot be said that the PLRA changes the legal consequences of the attorneys' pre-PLRA decision to file the case." Id.

8

Here, Oracle contends that applying ACPERA to Micron's pre-enactment amnesty agreement would have retroactive effect on Oracle's post-enactment civil action. Like the fee limitations at issue in Hadix, the civil leniency provisions do not change the legal consequences of civil lawsuits that are filed after ACPERA's enactment: "With respect to postjudgment monitoring performed after the effective date, by contrast, there is no retroactive effect, and the PLRA fees cap applies to such work." Hadix, 527 U.S. at 362. Because Oracle filed the present lawsuit against Micron six years after ACPERA was passed, the statutory provisions limiting civil damages apply prospectively in this litigation and do not trigger judicial scrutiny for retroactivity.

Another line of argument that Oracle raises in support of its retroactivity argument is that ACPERA was not intended to apply to preexisting amnesty agreements because it was intended to create "an additional incentive for corporations to disclose antitrust violations" in order to encourage companies that had not yet come forward to disclose antitrust crimes. Doc. no. 53 at 12-13 (quoting 150 Cong. Rec. H3657). It is undisputed that ACPERA was intended to encourage antitrust violators to "turn in their co-conspirators," but the language of the statute itself covers civil actions alleging antitrust violations "based on conduct covered by a currently effective antitrust leniency agreement." The statute on its face does not limit its application to conduct covered by agreements that were entered into only after the effective date of legislation. Counsel for Sun (now, Oracle) demonstrated this understanding of the civil leniency provisions in the demand for cooperation made in 2006, several years before filing this action, by acknowledging that Micron had entered into a conditional leniency agreement and that Micron intended to "take advantage of reduced penalties that may be available" under ACPERA, thereby triggering a duty to cooperate with Sun in the civil litigation against other DRAM suppliers. Doc. no. 60-3 at 2.

To address Oracle's incentive argument, Micron responds that ACPERA was passed not only to provide an incentive for conspirators to cooperate with the DOJ but also "to incentivize amnesty applicants to cooperate and facilitate [civil] plaintiffs' eventual recovery, in exchange for a limitation on the damages that may be assessed against the

9

cooperating defendant." Doc. no. 59 at 9-10. The legislative history indicates that Congress was concerned with injured private parties' ability to recover antitrust damages. Senator Hatch stated that "the legislation requires the amnesty applicant to provide full cooperation to the victims as they prepare and pursue their civil lawsuit." 150 Cong. Rec. at S3614. Here, ACPERA operated to provide such incentive for Micron to cooperate with civil plaintiffs. As the record demonstrates, Sun along with other opt-out plaintiffs in the consolidated antitrust cases sought Micron's cooperation in obtaining information in support of their claims. Micron represents that pursuant to Sun's request for cooperation, it provided Sun with an explanation of the relevant facts to the extent known to Micron, all discovery that Micron had previously produced to plaintiffs in the DRAM class action, and witness interviews with eight key Micron employees. See doc. no. 60 ¶ 6 & Ex. D (letters from Micron counsel to Oracle counsel).

Oracle further contends that applying ACPERA to Micron's pre-enactment leniency agreement would have impermissible retroactive effects on Oracle's substantive rights by eliminating its ability to seek joint and several liability and treble damages against Micron. The court has determined that ACPERA would not have a retroactive effect on Oracle's post-enactment lawsuit. See Hadix, 527 U.S. at 362. Further, the legislative history indicates that Congress expressly intended to remove exposure to joint civil liability for treble damages for cooperating amnesty applicants:

> This provision addresses this disincentive to self-reporting. Specifically, it amends the antitrust laws to modify the damage recovery from a corporation and its executives to actual damages. In other words, the total liability of a successful leniency applicant would be limited to single damages without joint and several liability. Thus, the applicant would only be liable for the actual damages attributable to its own conduct, rather than being liable for three times the damages caused by the entire unlawful conspiracy.

150 Cong. Rec. at S3614 (statement of Senator Hatch). Finally, Congress ensured that ACPERA preserved the right of antitrust victims to recover treble damages from co-conspirators: "because all other conspirator firms would remain jointly and severably [sic] liable for three times the total damages caused by the conspiracy, the victims' potential

total recovery would not be reduced by the amendments Congress is considering." Id. The legislative history thus demonstrates that the civil leniency provisions under section 213 do not diminish the victims' potential total antitrust recovery because the remaining co-conspirators remain jointly and severally liable for the treble damages.

Having determined that ACPERA does not have an impermissible retroactive effect in this civil action, the court DENIES Oracle's motion to strike the ACPERA-related affirmative defense. Accordingly, the court declines to reach Micron's estoppel argument.

For all the foregoing reasons, plaintiff's motion to strike defendants' twenty-first affirmative defense is hereby DENIED.

**IT IS SO ORDERED.**

Dated: September 16, 2011

PHYLLIS J. HAMILTON
United States District Judge